996 F.2d 1439
 Victor Manuel SEVERINO, Plaintiff-Appellant,
v.
Ismael NEGRON, Superintendent of the Edgecombe Correctional
Facility, and Thomas A. Coughlin, III, Commissioner,
Department of Correctional Services, in their official and
individual capacities, Defendants-Appellees.
 No. 1441, Docket 92-2750.
 United States Court of Appeals,
Second Circuit.
 Argued May 4, 1993.
Decided June 29, 1993.
 
 Peter Hirsch, New York City, for plaintiff-appellant.
 Edward J. Curtis, Jr., Asst. Atty. Gen., State of NY, New York City (Robert Abrams, Atty. Gen. of the State of NY, New York City, of counsel), for defendants-appellees.
 Before: MESKILL, Chief Judge, WALKER, Circuit Judge, and MOTLEY, District Judge.*
 PER CURIAM:
 
 
 1
 Appellant Victor Severino, a lawful resident alien, was sentenced to a term of two to six years in the custody of the New York Department of Correctional Services (DOCS) after his conviction for a drug violation. Severino was at risk of deportation as a consequence of his conviction. The Immigration and Naturalization Service (INS) did not respond within thirty days to DOCS's letter notice advising the INS of the conviction. If the INS had served a warrant against Severino within that period, he would have been ineligible for admission into the work release program. N.Y.Comp.Codes R. & Regs. tit. 7, § 1900.4(c)(4)(i)(g) (1992). However, in the absence of such a warrant, the temporary release committee determined that Severino had met all of the "eligibility" requirements listed in N.Y.Comp.Codes R. & Regs. tit. 7, § 1900.4(c) (1992), and was therefore fit to enter a temporary work release program. By all accounts, he performed well in the program. Then, in December 1991, five months after it received notice of Severino's conviction, the INS served a detainer and warrant on DOCS. Consequently, DOCS conducted a hearing at which officials asked Severino if he was the individual named in the warrant. No other questions were asked. As a result of Severino's affirmative answer he was removed from the work release program. He since has been released from prison.
 
 
 2
 In his 42 U.S.C. § 1983 complaint, Severino claimed he was denied due process of law because he did not receive a fair hearing. Judge Edelstein, adopting the recommendations of Magistrate Judge Grubin, granted defendants' motion for summary judgment and dismissed Severino's complaint. The district court found that there was no violation of due process. We are in doubt about this due process holding but nevertheless affirm on a different basis. The only relief not mooted by Severino's release from prison is his claim against appellee officials for money damages. We affirm because we hold that the appellee officials are entitled to qualified immunity.
 
 
 3
 Severino contends that whether an immigration warrant against him was outstanding affects only his eligibility to enter into a work release program and does not bear on his removal from such a program. Instead, he argues, the removal criteria found in N.Y.Comp.Codes R. & Regs. tit. 7, § 1904.1 (1992) should have been applied and a much more thorough hearing should have been held. While neither side disputes that a prisoner obtains a liberty interest in a work release program, see Tracy v. Salamack, 572 F.2d 393, 395-96 (2d Cir.1978) (per curiam), the dimensions of such a liberty interest are defined by the state law that creates it, see Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It would be neither anomalous nor at all surprising if the state's criteria for denying someone the receipt of a liberty interest in the first place were easier to satisfy than its criteria for subsequently divesting an individual of that interest. As the Supreme Court has noted, "[t]here is a crucial distinction between being deprived of a liberty one has ... and being denied a conditional liberty that one desires." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979).
 
 
 4
 Certainly if all that was required to remove an inmate from a work release program under the DOCS regulations was the existence of an immigration warrant against him, the cursory hearing held in this case would satisfy due process. However, if the existence of an immigration warrant is relevant only to determine eligibility to enter the work release program, then it is quite possible that appellant's hearing was not sufficient.
 
 
 5
 Section 1900.4 is entitled "Procedures for temporary release committees when considering temporary release applications " (emphasis added). Section (c) lists the eligibility requirements, including the nonexistence of an immigration warrant. By contrast, part 1904 is entitled "Removal From Temporary Release Program" (emphasis added). Section 1904.1 describes the conditions for the revocation of temporary release in broad subjective terms. An inmate may be removed from his program, for instance, if "[his] continued participation in a program of temporary release is inconsistent with the safety of the community." N.Y.Comp.Codes R. & Regs. tit. 7, § 1904.1(b) (1992). Nothing in section 1904.1 suggests that the mere existence of an immigration warrant is sufficient to remove an inmate from a work release program.
 
 
 6
 Under the New York regulations, in order to remove a work release participant from his program, the appropriate official might well have to find that the subjective criteria in section 1904.1 have been met. The mere determination in a hearing that an immigration warrant is outstanding probably does not suffice; all relevant factors should be considered in order to make certain that the hearing is meaningful. See Morrissey v. Brewer, 408 U.S. 471, 487-88, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972). If we were to rule today on the due process question, we likely would hold that a violation has occurred. We believe it would greatly behoove DOCS to clarify its regulations in order to avoid any future confusion as to how much process is due.
 
 
 7
 We do not need to rule definitively on the constitutional question, however, because even if there were a violation of due process, the appellee officials would be protected by qualified immunity. While Severino is suing these officials in both their individual and official capacities, it is clear that the Eleventh Amendment does not permit suit in this case for money damages against state officials in their official capacities. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Therefore, Severino is confined to suing the officials in their individual capacities. But such officials are guaranteed immunity for violating an individual's right unless "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). As we have stated, "the boundaries of the supposed 'right' must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his action was evident." Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir.1988).
 
 
 8
 Although it has been clear since Tracy that a liberty interest exists in a work release program, we cannot say that the boundaries of that interest are drawn with such clarity that the officials here knew precisely what was required to remove an inmate from the program. The section entitled "eligibility" could reasonably be interpreted to apply to an inmate's continuous eligibility, as both a magistrate judge and a district judge in this Circuit held. Although we might disagree with this holding, the very existence of a disagreement demonstrates the fuzziness of the boundaries of an inmate's liberty interest in a temporary release program in New York. Moreover, we have not ruled on this question before, and the parties have not directed our attention to any New York cases that have settled the issue. Therefore, we hold that whether or not the appellee state officials violated Severino's due process rights, they are immune from suit for money damages. We affirm on that basis.
 
 
 
 *
 Honorable Constance Baker Motley, United States District Judge for the Southern District of New York, sitting by designation